IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RYLAN REOPELLE,<br><br>　　　　Defendant. | Case No. 3:24-cr-36<br><br>**PLEA AGREEMENT** |

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States of America, by its attorneys, Mac Schneider, United States Attorney for the District of North Dakota, and Dawn M. Deitz, Assistant United States Attorney; Defendant, RYLAN REOPELLE; and Defendant's counsel, Tatiana Hackman, agree to the following:

　　1.　Defendant acknowledges the Indictment charges violations of Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), 841(b)(1)(C), 843(b), 846, 854, 848(a), 848(c), 856(a)(1), and 856(b); 28 U.S.C. § 2461; and 18 U.S.C. §§ 924(d), 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1956(h), 922(g)(1), 924(a)(2), and 2.

　　2.　Defendant has read the charges and Defendant's attorney has fully explained the charges to Defendant.

　　3.　Defendant fully understands the nature and elements of the charged crimes.

　　4.　Defendant will voluntarily plead guilty to Count Two of the Indictment.

　　5.　The parties agree this Plea Agreement shall be filed as part of the Court record and be governed by Federal Rule of Criminal Procedure 11(c). The parties

specifically agree that Rule 11(c)(1)(C) does not apply. If the United States makes the non-binding recommendations specified in this Plea Agreement, then Defendant acknowledges that this agreement will have been fulfilled. Except as provided in Rule 11(c)(5), the Court's refusal to accept any or all terms of the Plea Agreement does not give Defendant a right to withdraw Defendant's guilty plea.

6. Defendant will plead guilty because Defendant is in fact guilty of the charges. In pleading guilty to Count Two, Defendant acknowledges that:

> Count Two -- Conspiracy to Distribute and Possession with Intent to Distribute a Controlled Substance
> a. From in or between 2018 to the date of this Indictment, in the Districts of North Dakota, Eastern District of Michigan, and elsewhere, Defendant, did knowingly and intentionally combine, conspire, confederate, and agree together and with others, both known and unknown to the grand jury, to possess with intent to distribute and distribute: (i) 40 grams or more of a mixture and substance containing a detectable amount of fentanyl (a/k/a "N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide"), a Schedule II controlled substance, and (ii) a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2;
> b. In furtherance of this conspiracy and to effect and accomplish the objects of it, one or more of the conspirators committed the following overt acts: It was a part of said conspiracy that one or more of the conspirators traveled between the states of Michigan, North Dakota, and elsewhere, to obtain, transport, and distribute fentanyl and methamphetamine; It was further a part of said conspiracy that one or more of the conspirators used communication facilities, to include but not limited to United Parcel Service and United States Postal Service, to mail and ship United States currency, fentanyl, and methamphetamine from outside the state of North Dakota into the state of North Dakota to facilitate the distribution of fentanyl and methamphetamine; It was further a part of said conspiracy that the conspirators and others would and did distribute and possess with intent to distribute a mixture and substance containing a detectable amount of fentanyl and methamphetamine, Schedule II controlled substances, in or near the Turtle Mountain Indian Reservation, North Dakota, Fort Berthold Indian Reservation, North Dakota, Spirit Lake Indian Reservation, North Dakota, Bismarck-Mandan, North Dakota, Minot,

North Dakota, and elsewhere, including but not limited to: (a) In or about 2018 to the date of this Indictment, DWIGHT PRATT, A/K/A TRICK, A/K/A FAT BOY, AND LACEY MARIE GIPP, individually, and by aiding and abetting, distributed a controlled substance, namely, a mixture and substance of a detectable amount of fentanyl; (b) In or about 2020 to the date of this Indictment, DWIGHT PRATT, A/K/A TRICK, A/K/A FAT BOY; DEXAVIOR EVANS, A/K/A ZYAIRE, A/K/A MOTHER FUCKER; AND UNIDICTED COCONSPIRATOR L.J., individually, and by aiding and abetting, distributed a controlled substance, namely, a mixture and substance of a detectable amount of fentanyl; (c) In or about 2020 to the date of this Indictment, DWIGHT PRATT, A/K/A TRICK, A/K/A FAT BOY, AND UNINDICTED COCONSPIRATOR K.L., individually, and by aiding and abetting, distributed a controlled substance, namely, a mixture and substance of a detectable amount of fentanyl; (d) On or about November 10, 2023, DWIGHT PRATT, A/K/A TRICK, A/K/A FAT BOY, and CORNELIUS JOHNSON, individually, and by aiding and abetting, possessed with intent to distribute a controlled substance, namely, approximately 1,500 pills containing a mixture and substance of a detectable amount of fentanyl; (e) On or about January 3, 2024, DWIGHT PRATT, A/K/A TRICK, A/K/A FAT BOY; ERIC FINCH, a/k/a SCOOT, a/k/a SCOOTER; and ALEX ROGERS, a/k/a ACE, individually, and by aiding and abetting, possessed with intent to distribute a controlled substance, namely, approximately 2,900 pills containing a mixture and substance of a detectable amount of fentanyl; It was further a part of said conspiracy that certain conspirators sought and located users of fentanyl and methamphetamine to purchase controlled substances from other conspirators; It was further a part of said conspiracy that certain conspirators sought and located sub-distributors of fentanyl and methamphetamine for other conspirators; It was further a part of said conspiracy that one or more conspirators received money wire transfers, including but not limited to CashApp (Block, Inc.) and Walmart-to-Walmart (RIA Financial), that were proceeds of fentanyl and methamphetamine sales; It was further a part of said conspiracy that one or more conspirators sent money wire transfers that were proceeds of fentanyl and methamphetamine sales; It was further a part of said conspiracy that one or more of the defendants traveled between the states of Michigan, North Dakota, and elsewhere, via bus, automobile (including rental vehicles), airplane, and other means of transportation for purposes of obtaining and distributing controlled substances, and collecting and distributing proceeds of drug distribution activity; It was further a part of said conspiracy that one or more conspirators rented and occupied apartments, trailer homes, houses, and hotel rooms in North Dakota, Michigan, and elsewhere, from which to store, possess, and distribute fentanyl and methamphetamine; It was further a part of said conspiracy that conspirators utilized residences in or near the Turtle Mountain Indian Reservation, North Dakota, Fort Berthold Indian Reservation,

North Dakota, Spirit Lake Indian Reservation, North Dakota, Bismarck-Mandan, North Dakota, Minot, North Dakota, and elsewhere, to store, conceal, and distribute controlled substances, and to store and conceal the proceeds of drug trafficking conduct, to include but not limited to: (a) In or about 2018 to the date of this Indictment, DWIGHT PRATT, A/K/A TRICK, A/K/A FAT BOY, individually, and by aiding and abetting, knowingly opened, leased, rented, used, and maintained any place, whether permanently or temporarily, for the purpose of distributing and using any controlled substance; specifically, DWIGHT PRATT, A/K/A TRICK, A/K/A FAT BOY, opened, used, and maintained one or more residences in or near Bismarck-Mandan, North Dakota, for purposes of distributing opiate pills that were a mixture and substance containing fentanyl, a Schedule II controlled substance, and other controlled substances; (b) In or about 2018 to the date of this Indictment, DWIGHT PRATT, A/K/A TRICK, A/K/A FAT BOY, and LACEY MARIE GIPP, individually, and by aiding and abetting, knowingly opened, leased, rented, used, and maintained any place, whether permanently or temporarily, for the purpose of distributing and using any controlled substance; specifically, DWIGHT PRATT, A/K/A TRICK, A/K/A FAT BOY, and LACEY MARIE GIPP, opened, used, and maintained the residence of LACEY MARIE GIPP in or near Bismarck, North Dakota, for purposes of distributing opiate pills that were a mixture and substance containing fentanyl, a Schedule II controlled substance, and other controlled substances; (c) In or about 2023 to the date of this Indictment, DWIGHT PRATT, A/K/A TRICK, A/K/A FAT BOY; ALEX ROGERS, a/k/a ACE; and TEENA-MARIE SIMPSON, individually, and by aiding and abetting, knowingly opened, leased, rented, used, and maintained any place, whether permanently or temporarily, for the purpose of distributing and using any controlled substance; specifically, DWIGHT PRATT, A/K/A TRICK, A/K/A FAT BOY; ALEX ROGERS, a/k/a ACE; and TEENA-MARIE SIMPSON, opened, used, and maintained the residence of TEENA-MARIE SIMPSON in or near Mandan, North Dakota, for purposes of distributing opiate pills that were a mixture and substance containing fentanyl, a Schedule II controlled substance, and other controlled substances; (d) In or about 2023 to the date of this Indictment, DWIGHT PRATT, A/K/A TRICK, A/K/A FAT BOY; ELIJAH BEAU GRADY; and JILL HALL, individually, and by aiding and abetting, knowingly opened, leased, rented, used, and maintained any place, whether permanently or temporarily, for the purpose of distributing and using any controlled substance; specifically, DWIGHT PRATT, A/K/A TRICK, A/K/A FAT BOY; ELIJAH BEAU GRADY; and JILL HALL, opened, used, and maintained the residence of JILL HALL in or near the Fort Berthold Indian Reservation, North Dakota, for purposes of distributing opiate pills that were a mixture and substance containing fentanyl, a Schedule II controlled substance, and other controlled substances; (e) In or about 2023 to the date of this Indictment, ANTHONY ALEXANDER

WILLIAMS, a/k/a DIOR, a/k/a SKID; CLYDE LARK, a/k/a MIKE; and RUTHANN JANNEEN MOUNTAIN, individually, and by aiding and abetting, knowingly opened, leased, rented, used, and maintained any place, whether permanently or temporarily, for the purpose of distributing and using any controlled substance; specifically, ANTHONY ALEXANDER WILLIAMS, a/k/a DIOR, a/k/a SKID; CLYDE LARK, a/k/a MIKE; and RUTHANN JANNEEN MOUNTAIN, opened, used, and maintained the residence of RUTHANN JANNEEN MOUNTAIN in or near Minot, North Dakota, for purposes of distributing opiate pills that were a mixture and substance containing fentanyl, a Schedule II controlled substance, and other controlled substances; (f) In or about 2023 to the date of this Indictment, DEXAVIOR EVANS, a/k/a ZYAIRE, a/k/a MOTHER FUCKER; and UNINDICTED COCONSPIRATOR B.B., individually, and by aiding and abetting, knowingly opened, leased, rented, used, and maintained any place, whether permanently or temporarily, for the purpose of distributing and using any controlled substance; specifically, DEXAVIOR EVANS, a/k/a ZYAIRE, a/k/a MOTHER FUCKER, and UNINDICTED COCONSPIRATOR B.B., opened, used, and maintained the residence of UNINDICTED COCONSPIRATOR B.B. in or near Bismarck, North Dakota, for purposes of distributing opiate pills that were a mixture and substance containing fentanyl, a Schedule II controlled substance, and other controlled substances; (g) In or about 2023 to the date of this Indictment, DWIGHT PRATT, A/K/A TRICK, A/K/A FAT BOY; ANTHONY ALEXANDER WILLIAMS, a/k/a DIOR, a/k/a SKID; CLYDE LARK a/k/a MIKE; and RYLYNN REOPELLE, individually, and by aiding and abetting, knowingly opened, leased, rented, used, and maintained any place, whether permanently or temporarily, for the purpose of distributing and using any controlled substance; specifically, DWIGHT PRATT, a/k/a TRICK a/k/a FAT BOY; ANTHONY ALEXANDER WILLIAMS a/k/a DIOR a/k/a SKID; CLYDE LARK a/k/a MIKE; and RYLYNN REOPELLE, opened, used, and maintained the residence of RYLYNN REOPELLE in or near the Turtle Mountain Indian Reservation, North Dakota, for purposes of distributing opiate pills that were a mixture and substance containing fentanyl, a Schedule II controlled substance, and other controlled substances; (h) In or about 2021 to the date of this Indictment, DWIGHT PRATT, a/k/a TRICK, a/k/a FAT BOY, and KAYLEE RUTH LACOMPTE, individually, and by aiding and abetting, knowingly opened, leased, rented, used, and maintained any place, whether permanently or temporarily, for the purpose of distributing and using any controlled substance; specifically, DWIGHT PRATT, a/k/a TRICK, a/k/a FAT BOY, and KAYLEE RUTH LACOMPTE, opened, used, and maintained the residence of KAYLEE RUTH LACOMPTE in or near Bismarck, North Dakota, for purposes of distributing opiate pills that were a mixture and substance containing fentanyl, a Schedule II controlled substance, and other controlled substances; It was

further a part of said conspiracy that one or more conspirators collected money from other persons to purchase fentanyl and methamphetamine; It was further a part of said conspiracy that one or more conspirators would and did attempt to conceal their activities; It was further a part of said conspiracy that one or more conspirators would and did use United States currency in their drug transactions; It was further a part of said conspiracy that one or more conspirators would and did use telecommunication facilities, including cellular telephones, to facilitate the distribution of fentanyl and methamphetamine; and It was further a part of said conspiracy that one or more conspirators would and did use social media websites, including but not limited to WhatsApp and Facebook, to facilitate the distribution of fentanyl and methamphetamine

c. Defendant acknowledges sufficient facts exist to sustain a finding of guilt beyond a reasonable doubt in violation of Title 21, United States Code, Section 846, and Pinkerton v. United States, 328 U.S. 640 (1946).

7. Defendant understands the following maximum penalties apply:

Count Two – Conspiracy to Distribute and Possession with Intent to Distribute a Controlled Substance
Imprisonment: 20 years
Fine: $1,000,000
Supervised Release: 3 years mandatory
Special Assessment: $100

Defendant agrees to pay the Clerk of United States District Court the special assessment on or before the day of sentencing.

8. Defendant understands that by pleading guilty Defendant surrenders rights, including:

(a) The right to a speedy public jury trial and related rights as follow:

(i) A jury would be composed of twelve (12) lay persons selected at random. Defendant and Defendant's attorney would help choose the jurors by removing prospective jurors "for cause," where actual bias or other disqualification is shown; or by removing jurors without cause by exercising so-called peremptory challenges. The jury would have to agree

unanimously before it could return a verdict. The jury would be instructed that Defendant is presumed innocent and that it could not return a guilty verdict unless it found Defendant guilty beyond a reasonable doubt.

 (ii) If a trial were held without a jury, then the Judge would find the facts and determine whether Defendant was guilty beyond a reasonable doubt.

 (iii) At a trial, whether by a jury or Judge, the United States is required to present witness testimony and other evidence against Defendant. Defendant's attorney can confront and examine them. In turn, the defense can present witness testimony and other evidence. If witnesses for Defendant refuse to appear voluntarily, Defendant can require their attendance through the subpoena power of the Court.

 (iv) At a trial, Defendant has a privilege against self-incrimination; thus, Defendant can decline to testify. No inference of guilt can be drawn from Defendant's refusal to testify. Defendant can choose to testify but cannot be required to testify.

 (b) Defendant has a right to remain silent. However, under terms of the Plea Agreement, the Judge will likely ask Defendant questions about Defendant's criminal conduct to ensure that there is a factual basis for Defendant's plea.

9. Defendant understands that by pleading guilty Defendant is giving up all of the rights set forth in the prior paragraph, and there will be no trial. Defendant's attorney has explained those rights, and consequences of Defendant's waiver.

10. The Court shall impose a sentence sufficient to comply with purposes set forth in the Sentencing Reform Act. In doing so, the Court shall consider factors set forth in 18 U.S.C. § 3553(a) and must consult and consider the United States' Sentencing Commission, Guidelines Manual, (Nov. 2023) (USSG). Defendant understands that the United States Attorney's Office will fully apprise the District Court and the United States Probation and Pretrial Services Office of the nature, scope, and extent of Defendant's conduct, including all matters in aggravation and mitigation relevant to the issue of sentencing. The United States expressly reserves the right to appeal from an unreasonable sentence.

11. This Plea Agreement is binding only upon the United States Attorney for the District of North Dakota. It does not bind any United States Attorney outside the District of North Dakota, nor does it bind any state or local prosecutor. They remain free to prosecute Defendant for any offenses under their jurisdiction. This Plea Agreement also does not bar or compromise any civil or administrative claim.

12. Defendant understands the United States Attorney reserves the right to notify any local, state, or federal agency by whom Defendant is licensed, or with whom Defendant does business, of Defendant's conviction.

13. The parties agree that the following Sentencing Guidelines are applicable for Defendant's conduct:

- Fentanyl                                 18      USSG § 2D1.1(c)

The United States reserves the right to argue a higher offense level at sentencing if it is determined through the pre-sentence investigation that Defendant is a "career offender" pursuant to USSG § 4B1.1.

14. At sentencing, United States agrees to recommend a 2-level downward adjustment for acceptance of responsibility, provided Defendant has demonstrated a genuine acceptance of responsibility. (USSG § 3E1.1(a)). The United States further agrees to move for an additional 1-level downward adjustment for timely notifying the United States of Defendant's intention to enter a guilty plea, thus permitting the Court and the United States to allocate their resources efficiently. (USSG § 3E1.1(b)).

15. The parties stipulate and agree that, as of the date of this agreement, Defendant appears to qualify for a 2-level downward adjustment for acceptance of responsibility. However, the government may, in its discretion, contest the adjustment under USSG § 3E1.1(a) should Defendant subsequently fail to continue to accept responsibility by failing to abide by the conditions of release, if applicable; by providing false information to the Court, the probation office, or the United States; by unlawfully using controlled substances; by attempting to obstruct justice; by breaching this Plea Agreement; or by acting in a way that is inconsistent with, or failing to act in any way that is consistent with the granting of the adjustment under USSG § 3E1.1(a).

16. Neither the Court nor the Probation Office is a party to the Plea Agreement. Neither the Court nor the Probation Office is bound by the Plea Agreement as to determining the Sentencing Guideline range. The Court may depart from the applicable guidelines range if the Court, on the record, states factors not contemplated by the

Sentencing Guidelines' Commission to justify the departure. Both parties reserve the right to object to any departure. See USSG § 1B1.1, comment. (n.1) (defines "departure"). There may be other adjustments the parties have not agreed upon.

17. At sentencing, the United States will:

    (a) Recommend a sentence within the applicable Guideline range;

    (b) Recommend that Defendant be ordered to a reasonable period of supervised release;

    (c) Recommend that Defendant be ordered to pay the applicable special assessment fees;

    (d) Move to dismiss count sixteen of the Indictment.

18. Defendant acknowledges and understands that if Defendant violates any term of this Plea Agreement, engages in any further criminal activity, or fails to appear for sentencing, the United States will be released from its commitments. In that event, this Plea Agreement shall become null and void at the discretion of the United States, and Defendant will face the following consequences: (1) all testimony and other information Defendant has provided at any time to attorneys, employees, or law enforcement officers of the government, to the Court, or to the Federal Grand Jury, may be used against Defendant in any prosecution or proceeding; and (2) the United States will be entitled to reinstate previously dismissed charges and/or pursue additional charges against Defendant and to use any information obtained directly or indirectly from Defendant in those additional prosecutions. Nothing in this agreement prevents the United States from

prosecuting Defendant for perjury, false statement(s), or false declaration(s), if Defendant commits such acts in connection with this agreement or otherwise.

19. Defendant acknowledges the provisions of Title 18, United States Code, Sections 2259 and 3663A, which require the Court to order restitution. Defendant agrees to pay restitution as may be ordered by the Court. Defendant acknowledges and agrees that the Court will order Defendant to make restitution for all loss caused by Defendant's conduct, regardless of whether counts of the Indictment will be dismissed as part of this Plea Agreement. Defendant further agrees to grant the United States a wage assignment, liquidate assets, or complete any other tasks the Court finds reasonable and appropriate for the prompt payment of any restitution or fine ordered by the Court.

20. The United States will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. Defendant and Defendant's attorney acknowledge that no threats, promises, or representations exist beyond the terms of this Plea Agreement.

21. **Defendant's Waiver of Appeal.** Defendant acknowledges having been advised by counsel of Defendant's rights to appeal the conviction or sentence in this case, including the appeal right conferred by 18 U.S.C. § 3742, and to challenge the conviction or sentence collaterally through post-conviction proceedings, including proceedings under 28 U.S.C. § 2255. Defendant understands these rights, and in exchange for the concessions made by the United States in this plea agreement, Defendant hereby knowingly and voluntarily waives these rights, except as specifically reserved herein. Defendant's waiver of these rights includes, but is not limited to, a waiver of all rights to

appeal or to collaterally attack: Defendant's conviction or sentence; all non-jurisdictional issues; any assessment, restitution or forfeiture order; the constitutionality of the applicable guidelines; and the constitutionality of the statute(s) to which Defendant is pleading guilty or under which Defendant is sentenced, or to argue that the admitted conduct does not fall within the scope of the statute(s). Defendant reserves the right to appeal a sentence of imprisonment imposed above the upper end of the applicable guidelines range and the right to appeal or to collaterally attack the conviction or sentence based on a claim of ineffective assistance of counsel that challenges the validity of the guilty plea or this waiver.

22. By signing this Plea Agreement, Defendant further specifically waives Defendant's right to seek to withdraw Defendant's plea of guilty, pursuant to Federal Rules of Criminal Procedure 11(d), once the plea has been entered in accordance with this agreement. The appellate court will enforce such waivers. Defendant agrees that any attempt to withdraw Defendant's plea will be denied and any appeal of such denial should be dismissed.

23. The Assistant United States Attorney and attorney for Defendant agree to abide by the provisions of Rule 32(f) of the Federal Rules of Criminal Procedure. The attorneys acknowledge their obligation to use good-faith efforts to resolve any disputes regarding the Presentence Investigation Report (PSIR) through a presentence conference or other informal procedures.

24. Defendant understands that by pleading guilty she will be convicted, and that any individual convicted who is not a United States citizen may be removed from the

United States, denied citizenship, and denied admission to the United States in the future. Defendant's attorney has explained this consequence of his guilty plea.

25. Defendant acknowledges reading and understanding all provisions of the Plea Agreement. Defendant and Defendant's attorney have discussed the case and reviewed the Plea Agreement. They have discussed Defendant's constitutional and other rights, including, but not limited to, Defendant's plea-statement rights under Rule 410 of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure.

AGREED:

MAC SCHNEIDER
United States Attorney

Dated: 6/10/2024

By: DAWN M. DEITZ
Assistant United States Attorney

Dated: 6/6/2024

RYLAN REOPELLE
Defendant

Dated: 6/10/2024

TATIANA HACKMAN
Attorney for Defendant